# EXHIBIT 8

IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

**UNDER SEAL**

IN RE: GRAND JURY SUBPOENA )
NO. 25 ███████████ )    Case No. 1:26-dm-1   (WBP)
 )

## GOVERNMENT'S OPPOSITION TO
## NAKASHIMA'S MOTION TO QUASH

On March 2, 2026, reporter Ellen Nakashima was served with a subpoena to appear and testify on April 7, 2026, before the grand jury in Alexandria. On April 7, 2026, Nakashima moved to quash the subpoena, essentially on the grounds that she suspects that the subpoena was issued to harass her or retaliate against her for her work as a reporter at the Washington Post.

Her suspicions are unfounded. To the contrary, the subpoena was issued in furtherance of an investigation into an illegal disclosure of information by someone who illegally transmitted national defense information to Ms. Nakashima in violation of 18 U.S.C. § 793. ████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████ the illegal disclosure of information that was in Nakashima's possession risks exceptionally grave harm to the national security of the United States, and to future military operations.[1]



To be clear: the United States is not interested in prosecuting Nakashima for her involvement with this disclosure; in fact, the United States applied for and obtained a court order providing her with immunity for her testimony.[2] Instead, the United States is focused on identifying and prosecuting the individual who risked grave harm to the national security by disclosing particular national defense information to Nakashima, and then preventing that individual from risking grave harm to the national security by illegally disclosing more classified national defense information again in the future. Accordingly, the Court should deny the motion to quash.

## Argument

"The investigative power of the grand jury is necessarily broad if its public responsibility is to be adequately discharged." *Branzburg v. Hayes*, 408 U.S. 665, 700 (1972). In the context of a grand jury subpoena, "the longstanding principle that the public has a right to each person's evidence is particularly strong." *In re Grand Jury Subpoena*, 646 F.3d 159, 164 (4th Cir. 2011) (quoting *In re Grand Jury Proceedings #5 Empanelled Jan. 28, 2004*, 401 F.3d 247, 250 (4th Cir. 2005)). "[T]he grand jury's authority to subpoena witnesses is not only historic, but essential to its task." *Branzburg*, 408 U.S. at 688. Absent a compelling reason, a court may not interfere with the grand jury process." *In re Grand Jury Proceedings # 5 Empanelled January 28, 2004*, 401 F.3d 247, 250 (4th Cir.2005) (citation omitted).

The Court "may quash or modify [a] subpoena if compliance would be unreasonable or oppressive." Fed. R. Crim. P. 17(c). While the Court oversees that the grand jury uses its

---

[2] Exhibit 2 to this pleading is an order from United States District Judge Patricia Tolliver Giles, dated February 24, 2026, providing immunity for Nakashima for any statements that she makes in the grand jury regarding this investigation.

powers for legitimate purposes, the Court "should not intervene in the grand jury process absent a compelling reason." *United States v. (Under Seal)*, 714 F.2d 347, 350 (4th Cir. 1983).

A party moving to quash a grand jury subpoena faces a heavy burden. "[A] grand jury subpoena issued through normal channels is presumed to be reasonable, and the burden of showing unreasonableness must be on the recipient who seeks to avoid compliance." *United States v. R. Enters., Inc.*, 498 U.S. 292, 301 (1991). A "presumption of regularity" attaches to the grand jury's proceedings, including its issuance of subpoenas. *See Grand Jury Subpoena*, 646 F.3d at 164. A party attempting to quash a subpoena bears the burden of rebutting the "presumption of regularity" that attaches to a grand jury's proceedings. *See United States v. Brothers Const. Co. of Ohio*, 219 F.3d 300, 314 (4th Cir. 2000). Nakashima cannot carry that burden.

I.    Nakashima Does Not Have a Cognizable First Amendment Claim

"There is no First Amendment testimonial privilege, absolute or qualified, that protects a reporter from being compelled to testify by the prosecution or the defense in criminal proceedings about criminal conduct that the reporter personally witnessed or participated in, absent a showing of bad faith, harassment, or other such non-legitimate motive, even though the reporter promised confidentiality to his source." *United States v. Sterling*, 724 F.3d 482, 492 (4th Cir. 2013). In *Branzburg v. Hayes*, 408 U.S. 665 (1972), the Supreme Court "in no uncertain terms rejected the existence of such a privilege." *Sterling*, 724 F.3d at 492, *quoting In re Grand Jury Subpoena, Judith Miller*, 438 F.3d 1141, 1146 (D.C. Cir. 2006).[3]

In *Branzburg*, the Supreme Court rejected claims of privilege by reporters who had been called to testify before a grand jury about criminal conduct involving confidential sources.

---

[3] Internal citations and quotations are omitted throughout this pleading.

3

*Branzburg*, 408 U.S. at 667-679, 708-709. The Court "decline[d]" to "interpret[] the First Amendment to grant newsmen a testimonial privilege that other citizens do not enjoy." *Id.* at 690. "[W]e cannot," the Court explained, "seriously entertain the notion that the First Amendment protects a newsman's agreement to conceal the criminal conduct of his source, or evidence thereof, on the theory that it is better to write about crime than to do something about it." *Id.* at 692. "Insofar as any reporter in these cases undertook not to reveal or testify about the crime he witnessed," the Court continued, "his claim of privilege under the First Amendment presents no substantial question." *Id.*

The *Branzburg* Court accordingly "insist[ed] that reporters, like other citizens, respond to relevant questions put to them in the course of a valid grand jury investigation or criminal trial," even if doing so would require revealing the identity of a confidential source. *Id.* at 690-91. The Court expressly rejected any requirement that the government "demonstrate[] some 'compelling need' for a newsman's testimony" as a prerequisite to obtaining it. *Id.* at 708; *see id.* at 680, 705-706.

In *Branzburg*, the Supreme Court found that none of the constitutional and policy concerns advanced in support of a reporter's privilege justified allowing reporters to refuse to testify in criminal proceedings, *id.* at 679-708. The Court further explained that "the Constitution does not, as it never has, exempt the newsman from performing the citizen's normal duty of appearing and furnishing information relevant to the grand jury's task." *Id.* at 691.

In particular, the *Branzburg* Court rejected the argument that if reporters are "forced to respond to subpoenas and identify their sources or disclose other confidences, their informants will refuse or be reluctant to furnish newsworthy information in the future." *Id.* at 682. The Court reasoned that the "preference for anonymity" of informants who "desire to escape criminal

4

prosecution" is "hardly deserving of constitutional protection." *Id.* at 691. And the Court explained that "[t]he crimes of news sources are no less reprehensible and threatening to the public interest when witnessed by a reporter than when they are not." *Id.* at 692. The Court did not limit its holding to news sources who themselves have committed crimes, but extended it also to cover confidential sources with information about illegal conduct by others. *Branzburg*, 408 U.S. at 693-695.

The Supreme Court has consistently adhered to the holding and reasoning of *Branzburg*. *See, e.g., Citizens United v. FEC*, 558 U.S. 310, 352 (2010) ("We have consistently rejected the proposition that the institutional press has any constitutional privilege beyond that of other speakers"); *Cohen v. Cowles Media Co.*, 501 U.S. 663, 669 (1991) (explaining that "the First Amendment [does not] relieve a newspaper reporter of the obligation shared by all citizens to respond to a grand jury subpoena and answer questions relevant to a criminal investigation, even though the reporter might be required to reveal a confidential source"); *University of Pa. v. EEOC*, 493 U.S. 182, 201 (1990) (explaining that *Branzburg* "rejected the notion that under the First Amendment a reporter could not be required to appear or to testify as to information obtained in confidence without a special showing that the reporter's testimony was necessary"). In short, it is "the duty of a citizen, whether reporter or informer, to respond to [a] grand jury subpoena and answer relevant questions put to him." *Branzburg*, 408 U.S at 697.

In *Sterling*, the Fourth Circuit reversed a district court order quashing a subpoena for a reporter's testimony on the ground that although the testimony was relevant, it was unnecessary in light of other evidence in the government's possession. The Fourth Circuit explained that both the majority and Justice Powell's concurring opinion in *Branzburg* had rejected a requirement that the government satisfy a compelling-interest test substantially identical to the one the district court

5

adopted, and had also rejected the policy arguments Sterling advanced in support of his claimed privilege. *Id.* at 495. In short, "[t]here is no First Amendment testimonial privilege, absolute or qualified, that protects a reporter from being compelled to testify...." *Sterling,* 724 F.3d at 492. *See In re Greensboro News Co.,* 727 F.2d 1320, 1322 (4th Cir. 1984) (recognizing that "the rights of the news media . . . are co-extensive with and do not exceed those rights of members of the public in general").

In light of the foregoing authorities, Nakashima's First Amendment concerns provide no basis for quashing the subpoena. The news media has no special privilege under the First Amendment in responding to valid legal process issued in aid of a criminal investigation. In the context of grand jury subpoenas, the law requires nothing more than the good-faith application of the generally-applicable standard, under which a subpoena must be upheld "unless there is no reasonable possibility that the category of materials the Government seeks will produce information relevant to the general subject of the grand jury's investigation." *United States v. R Enterprises,* 498 U.S. 292, 301 (1991).

stated that the information at issue was classified TOP SECRET; he stated that the unauthorized disclosure of that information could reasonably be expected to cause exceptionally grave damage to national security, and compromise future military operations. The First Amendment surely requires nothing more.

Although Nakashima expresses general concerns about the possible chilling effects that could result from requests for information about confidential sources and newsroom discussions, the Supreme Court in *Branzburg* dismissed precisely the same concerns in refusing to give

6

reporters special First Amendment status. *See* 408 U.S. at 691 (requiring reporter to comply with grand jury subpoena "involves no restraint on what newspapers may publish or on the type or quality of information reporters may seek to acquire, nor does it threaten the vast bulk of confidential relationships between reporters and their sources.").

In *Branzburg*, the challenged subpoenas required reporters to appear before a grand jury in person to testify about, among other things, their interactions with sources. Reporters enjoy no special solicitude vis-à-vis the grand jury. *See id.* at 690; *Sterling*, 724 F.3d at 499, 505. The First Amendment does not "relieve a newspaper reporter of the obligation shared by all citizens to respond to a grand jury subpoena and answer questions relevant to a criminal investigation, even though the reporter might be required to reveal a confidential source." *Cowles Media Co.*, 501 U.S. at 669.

In the end, the questioning of Nakashima will pose no legitimate First Amendment concerns. Nakashima's testimony is highly relevant to an ongoing criminal investigation. The questioning will be properly tailored to that investigation.

## II.    The Subpoena Is Not Improper or Abusive

As noted above, "a grand jury subpoena issued through normal channels is presumed to be reasonable, and the burden of showing unreasonableness is on the recipient who seeks to avoid compliance." *R. Enters., Inc.*, 498 U.S. at 301. "[T]he law presumes, absent a strong showing to the contrary, that a grand jury acts within the legitimate scope of its authority." *Id.* at 301-02.

Nakashima fails to rebut the presumption of regularity that attaches to grand jury subpoenas; she cannot show that the government acted in bad faith in seeking the grand jury subpoena, or that it was issued for improper purposes. Throughout her papers, she speculates

that the purpose of the subpoena is to harass her or to retaliate against her. She has no evidence, however, of any foul play at the grand jury. Particularly considering the immunity awarded to her for her testimony, her arguments are pure conjecture.

The "recipient who seeks to avoid compliance" with a grand jury subpoena bears the burden of showing otherwise, *id.* at 301, and has the "initial task of demonstrating . . . some valid objection to compliance." *In re Grand Jury Matter (Special Grand Jury Narcotics December Term, 1988, Motion to Quash Subpoena)*, 926 F.2d 348, 350 (4th Cir. 1991) (quoting *R. Enters.*, 498 U.S. at 305 (Stevens, J., concurring in part and concurring in the judgment)).

Mere conjecture and speculation about the government's motives do not satisfy that burden. *See United States v. Leung*, 40 F.3d 577, 582 (2d Cir. 1994) (holding that "speculations about possible irregularities in the grand jury investigation were insufficient to overcome the presumption that this investigation was for a proper purpose"); *United States v. Bin Laden*, 116 F. Supp. 2d 489, 493 (S.D.N.Y. 2000) (recognizing that "speculations about the Government's motives are insufficient to overcome the presumption of regularity"); *United States v. McVeigh*, 896 F. Supp. 1549, 1557-58 (W.D. Okla. 1995) ("Such rank speculation or supposition is insufficient to overcome the presumption of regularity that attaches to the grand jury's acts or to raise a substantial factual issue as to the purpose for which the subpoena and directive were issued."). Since that is all she offers, Nakashima has failed to carry her burden.

The fact that the Department of Justice requested and obtained immunity for Nakashima reinforces that the subpoena was for a legitimate purpose. The decision to grant a witness immunity is not taken lightly. By law, the Department must request use and derivative use immunity before the court can grant it. *See* 18 U.S.C. § 6003(a). Such an application must be approved by statutorily designated leadership within the Department, and it can be approved only

8

when "the testimony or other information from such individual *may be necessary to the public interest.*" *Id.* § 6003(b) (emphasis added). All of those steps were followed here. In fact, the Court's immunity order reflects that it was "satisfied that the testimony or other information from [Nakashima] may be necessary in the public interest." The solemn decision to provide Nakashima with immunity reflects the importance of her testimony to an ongoing investigation.[4]

In her pleading supporting her motion to quash, Nakashima repeatedly claims that the issuance of the subpoena to her was a direct response to the government's frustration at being thwarted in its attempts to search the property of another Washington Post reporter. For example, Nakashima claims that, where the subpoena was served "only six days after a federal magistrate judge ruled against the government in its raid of another Post reporter's home," "the timing is no coincidence"). Motion to Quash, at p.2.

Further, Nakashima argues that the timing of the grand jury subpoena on March 2, 2026, is "telling" because the fact that the subpoena was served on March 2, 2025 - -

> only ten days after the court admonished the government in open court in the first *Natanson* hearing, only six days after the Court's adverse order rejecting the government's filter team proposal, and literally the day before the parties were to appear before the Court to discuss how to implement the review without the government's filter team court admonished the government in open court . . . strongly suggests that the subpoena is part of the Administration's ongoing campaign to target and punish the Post and its reporters. . . ."

*Id.* at p.12.

---

[4] For the record, we note that, as required under the Department of Justice's news media policy, codified at 28 C.FR. § 50.10, prior to obtaining the grand jury subpoena, the government received approval from the Attorney General to proceed.

Nakashima argues that the timing of the subpoena "suggests that the investigation is a pretext and that the subpoena was issued with animus. *Id*. at p.20. In support of her argument, she again lays out (what she thinks) was the timeline:

> On February 20, at a hearing for the motion for return of property, the court admonished the government for failing to disclose the Privacy Protection Act – which imposes restrictions on seizures of press records – while pursuing the warrant for Natanson's home. *See* Latcovich Decl. ¶ 17. Then, on February 24, the court partially granted The Post and Natanson's 41(g) motion, holding that the seizure had restrained their First Amendment rights. *See id.* ¶ 18.
>
> Just six days after the court ruled in The Post's favor and against the government - and the day before the parties were to reappear in court - - Nakashima received this grand jury subpoena. Nakashima Decl. ¶ 119. "The timeline tells the story here." *Queerdoc*, 807 F. Supp.3d at 1302.

We agree that "[t]the timeline tells the story here," but the actual timeline is not what Nakashima thinks it is. Exhibit 3 to this pleading is a copy of the government's *application* for an order of immunity for Nakashima. That application was file-stamped by the Court on February 13. 2026 - - a full week before the hearing on the Natanson search warrant. The subpoena attached to the motion was dated February 13, 2026, and the letter of authorization (from Assistant Attorney General Eisenberg to Executive Assistant United States Attorney Bradsher) for the application was dated February 13, 2026 as well.[5]

In short:

> (a) the determination by the Department of War that the disclosure of information contained in Nakashima's Signal messages risked causing exceptionally grave harm was made 11 days before the hearing on Natanson's motion for return of property;
>
> (b) a grand jury subpoena for Nakashima's testimony was issued a week before the hearing on Natanson's motion for return of property;

---

[5] Exhibit 1 to this pleading (as noted above, filed *ex parte* through the Classified Information Security Officer) is dated February 9, 2026.

(c) the Department of Justice authorized the United States Attorney's Office to seek an immunity order for Nakashima a week before the hearing on Nakashima's motion; and

(d) the United States applied to Judge Giles for that immunity order a week before that hearing.

In light of that timing, the actual context of the service of the subpoena shows a picture very different from the one created by Nakashima's speculations.

In short, Nakashima's argument is based on a fundamental misunderstanding of the underlying facts. That is not surprising, however, because a witness's obligation to comply with a grand jury subpoena does not depend on her understanding of the scope or timing of the underlying investigation. Nakashima's misunderstanding of the background and context of the grand jury investigation in which she received a subpoena simply cannot predicate the quashing of that subpoena.

In the end, Nakashima's effort to quash the subpoena on the basis of conjectured improprieties and ulterior motives is nothing more than an attempt to unnecessarily "saddle [the] grand jury with minitrials and preliminary showings [that] would assuredly impede its investigation and frustrate the public's interest in the fair and expeditious administration of the criminal laws." *R. Enters.*, 498 U.S. at 298-99.

The ███████████████ as well as the grant of testimonial immunity to Nakashima attached as Exhibit 2, establish that the grand jury investigation is focused on the identification of someone (obviously someone other than Nakashima) who disclosed national defense information that risked severe harm to the national security of the United States. In light of ██████ and that grant of testimonial immunity, Nakashima's argument that the subpoena was motivated by harassment or retaliation must be rejected; after all, its acceptance in

11

the face of these facts would essentially provide her with immunity from having to testify before any grand jury for any reason for the life of this Presidential administration, and perhaps beyond.

For the reasons stated above, the Court should find that the grand jury subpoena does not infringe on any First Amendment interests, and Nakashima must comply with it promptly.

## Conclusion

For the foregoing reasons, the government requests that the Court deny Nakashima's Motion to Quash.

Respectfully submitted,

Todd W. Blanche
Acting Attorney General

By: _____          By: _____
    Scott Lara                           Gordon D. Kromberg
    Senior Trial Attorney                Assistant United States Attorney
    Counterespionage Section             Virginia Bar No. 33676
    National Security Division           Assistant United States Attorney
    U.S. Department of Justice           Attorney for the United States
                                         2100 Jamieson Avenue
                                         Alexandria, VA  22314
                                         (703) 299-3700
                                         (703) 837.8242 (fax)
                                         gordon.kromberg@usdoj.gov

12

<u>Certificate of Service</u>

I hereby certify that on April 21, 2026, I transmitted the foregoing GOVERNMENT'S

OPPOSITION TO ELLEN NAKASHIMA'S MOTION TO QUASH by email to below listed

counsel of record:

> Simon A. Latcovich, at slatcovich@wc.com
> Nicholas G. Gamse, at ngamse@wc.com
> Claire R. Cahill, at ccahill@wc.com
> Summer G. Krasuski, at Skrasuski@wc.com

Gordon D. Kromberg
Assistant United States Attorney
Virginia Bar No. 33676
Assistant United States Attorney
Attorney for the United States
2100 Jamieson Avenue
Alexandria, VA 22314
(703) 299-3700
(703) 837.8242 (fax)
gordon.kromberg@usdoj.gov







*UNDER SEAL*

# Exhibit 2

# Immunity Order

IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

**UNDER SEAL**

UNITED STATES OF AMERICA )
)
v. )    GRAND JURY 25-3
)
▮▮▮▮▮▮▮▮▮▮▮ )

## O R D E R

The United States of America, by its attorneys, Todd W. Blanche, Deputy Attorney General, and Gordon D. Kromberg, Assistant United States Attorney, having requested that this Court issue an Order pursuant to 18 U.S.C. § 6003 compelling ELLEN NAKASHIMA (hereinafter referred to as "the witness") to testify and to provide other information in the above-captioned proceeding and in any other proceedings ancillary thereto;

AND being advised that the request was approved by John A. Eisenberg, Assistant Attorney General, U.S. Department of Justice, pursuant to his authority under 18 U.S.C. § 6003(b) and 28 C.F.R. § 0.175(a);

AND the Court being satisfied that the testimony or other information from the witness may be necessary in the public interest, and that the witness is likely to refuse to testify or provide other information on the basis of the witness's privilege against self-incrimination;

IT IS ORDERED that the witness shall testify fully, completely and truthfully before the above-captioned proceeding;

IT IS FURTHER ORDERED that the witness shall provide full, complete and truthful information in regard to any other proceedings ancillary to the above-captioned proceeding;

IT IS FURTHER ORDERED that no testimony or other information compelled under this Order (or any information directly or indirectly derived from such testimony or other information) may be used against the witness in any criminal case, except as permitted by 18 U.S.C. § 6002.


Date: 2/24/2026
Alexandria, Virginia

Patricia Tolliver Giles
United States District Judge

WE ASK FOR THIS:

Todd W. Blanche
Deputy Attorney General

By:

Gordon D. Kromberg
Assistant United States Attorney

2

Under Seal

# Exhibit 3

Application for Immunity Order

IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

**UNDER SEAL**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | GRAND JURY 25-3 |
| | ) | |
| ████████████████ | ) | |

APPLICATION FOR COMPULSION ORDER

COMES NOW the United States, by Todd W. Blanche, Deputy Attorney General, and Gordon D. Kromberg, Assistant United States Attorney, and requests this Honorable Court to issue an Order pursuant to 18 U.S.C. § 6003(a) compelling Ellen Nakashima (hereinafter referred to as "the witness") to give testimony and provide other information concerning the above-captioned proceeding and in any other proceedings ancillary thereto. The testimony of the witness and other information from the witness may be necessary to the public interest, and the witness is likely to refuse to testify and provide other information on the basis of the witness's privilege against self-incrimination. This application is made with the approval of John A. Eisenberg, Assistant Attorney General, U.S. Department of Justice, pursuant to his authority under 18 U.S.C. § 6003(b) and 28 C.F.R. § 0.175(a).

Respectfully submitted,

Todd W. Blanche
Deputy Attorney General

By: _____

Gordon D. Kromberg
Assistant United States Attorney

Subpoena to Testify Before a Grand Jury – AO 110 (EDVA ver 2/5/2024)

# UNITED STATES DISTRICT COURT

## Eastern District of Virginia

### SUBPOENA TO TESTIFY BEFORE A GRAND JURY

**To:** Ellen Nakashima

      **YOU ARE COMMANDED** to appear in this United States District Court at the time, date, and place shown below to testify before the District Court's Federal Grand Jury. When you arrive, you must remain at the courthouse until the presiding Judge or a Court Officer allows you to leave.

| Place: | U.S. District Court<br>401 Courthouse Square<br>Alexandria, VA 22314 | Date & Time: | 3/4/2026  09:30 AM |
|---|---|---|---|

**Date:**    2/13/2026

*CLERK OF COURT*

*Signature of Clerk or Deputy Clerk*

This Subpoena was prepared and issued pursuant to the authority of the United States Attorney for the Eastern District of Virginia. The Subpoena was reviewed and approved by the following Requesting Attorney:

Gordon D. Kromberg, Assistant U.S. Attorney
United States Attorney's Office
Eastern District of Virginia – Alexandria Division

2100 Jamieson Avenue
Alexandria, VA 22314



**U.S. Department of Justice**

National Security Division

| | |
|---|---|
| *Assistant Attorney General* | *Washington, D.C.  20530* |

February 13, 2026

Todd W. Blanche
United States Deputy Attorney General

J. Frank Bradsher
Executive Assistant United States Attorney
Eastern District of Virginia
2100 Jamieson Ave
Alexandria, VA 22314

Re:    *Grand Jury Proceeding U.S. v.* ███████████

Dear Mr. Bradsher:

Pursuant to the authority vested in me by 18 U.S.C. § 6003(b) and 28 C.F.R. § 0.175(a), I hereby approve your request for authority to apply to the United States District Court for the Eastern District of Virginia for an order, pursuant to 18 U.S.C. §§ 6002-6003, requiring Ellen Nakashima to give testimony or provide other information in the above matter and in any further proceedings resulting therefrom or ancillary thereto.

Sincerely,                                              *ES*

*John A. Eisenberg*

John A. Eisenberg
Assistant Attorney General